Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
Naeun Rim - State Bar No. 263558
    nrim@birdmarella.com
Darren L. Patrick - State Bar No. 310727
    dpatrick@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

*Attorneys for Defendants Hanmi Financial Corporation, Bonita I. Lee, and Romolo C. Santarosa*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILLYOUNG OH, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>  vs.<br><br>HANMI FINANCIAL CORPORATION, BONITA I. LEE, and ROMOLO C. SANTAROSA,<br><br>           Defendants. | CASE NO. 2:20-cv-02844-FLA-JC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing<br>Date:  January 29, 2021__<br>Time:  10:00 a.m.<br>Place:  Courtroom 6B<br>        First Street Courthouse<br>        350 West First Street<br>        Los Angeles, CA 90012<br><br>Action Filed:  March 26, 2020<br><br>Assigned to Hon. Fernando L. Aenlle-Rocha (per 12/30/20 Order of the Chief Judge) |

Case No. 2:20-cv-02844

REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................... 5

II.     FAR FROM MAKING FALSE STATEMENTS, HANMI REPEATEDLY DISCLOSED ITS INTERNAL CONTROL DEFICIENCIES AND ANTICIPATED LOAN LOSSES ............................. 6

III.    PLAINTIFF'S OPPOSITION IGNORES THE MOST RELEVANT AUTHORITIES REGARDING INADEQUATE LOAN LOSS RESERVES ............................................................................................. 7

IV.     THE FAC'S ALLEGED GAAP VIOLATIONS DO NOT SUPPORT A SECURITIES FRAUD CLAIM ....................................................... 10

        A.    The FAC's GAAP-related allegations are vague and conclusory. ....... 11

        B.    Plaintiff Relies On Inapposite Authorities Related to GAAP. ............. 12

V.      THE FAC'S ALLEGATIONS REGARDING "SUSPICIOUS" CHANGES IN HANMI'S PERSONNEL DO NOT SHOW FRAUD ........... 15

VI.     PLAINTIFF'S OWN AUTHORITIES DEMONSTRATE THE INSUFFICIENCY OF THE FAC'S "FALSITY" ALLEGATIONS .............. 17

VII.    THE ABSENCE OF INSIDER STOCK SALES DURING THE CLASS PERIOD NEGATES SCIENTER ....................................................... 18

VIII.   THE FAC'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL ............................................................................... 19

IX.     CONCLUSION .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................5, 15

*In re Capstone Turbine Corp. Sec. Litig.*,
No. CV158914DMGRAOX, 2018 WL 836274 (C.D. Cal. Feb. 9,
2018) .................................................................................................... 13, 14

*In re Countrywide Fin. Corp. Derivative Litig.*,
554 F.Supp.2d 1044 (C.D. Cal. 2008)....................................................... 9

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ...........................................................*passim*

*In re Downey Sec. Litig.*,
No. CV 08-3261-JFW(RZX), 2009 WL 2767670 (C.D. Cal. Aug.
21, 2009) ..........................................................................................*passim*

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002) ...................................................................10

*In re Loudeye Corp. Sec. Litig.*,
2007 WL 2404626 (W.D. Wash. Aug. 17, 2007) ......................................7

*Mulderrig v. Amyris, Inc.*,
No. 19-CV-1765 YGR, 2020 WL 5903844 (N.D. Cal. Oct. 5, 2020) ........ 13, 14

*Murphy v. Precision Castparts Corporation*,
No. 3:16-CV-00521-SB, 2017 WL 3084274 (D. Or. June 27, 2017) ................17

*Nguyen v. Endologix, Inc.*,
No. 17-00017-AB, 2018 WL 10321880 (C.D. Cal. Sept. 6, 2018),
*aff'd,* 962 F.3d 405 (9th Cir. 2020) ...........................................................16, 17

*In re NVIDIA Corp. Secs. Litig.*,
768 F.3d 1046 (9th Cir. 2014)...................................................................19

REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Oklahoma Firefighters Pension & Ret. System v. Ixia*,
50 F. Supp. 3d 1328 (C.D. Cal. 2014)......................................................................7

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
595 F.3d 86 (2d Cir. 2010) ......................................................................................9

*S.E.C. v. Mozilo*,
No. CV09-3994HFWNABX, 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) ......................................................................................................................14

*In re Software Toolworks Inc.*,
50 F.3d 615 (9th Cir. 1994) ....................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................................5, 16

*Tripp v. Indymac Fin. Inc.*,
2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) ....................................................9, 10

*In re VeriFone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) ......................................................................................9

*In re Wet Seal, Inc. Sec. Litig.*,
518 F.Supp.2d 1148 (C.D. Cal. 2007)....................................................................18

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) ..................................................................................10

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999) ....................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ......................................................................15, 16, 19

4                                                                Case No. 2:20-cv-02844

**REPLY IN SUPPORT OF MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff's counsel has crafted a convoluted narrative based on speculative inferences from publicly available documents and conclusory allegations.  But a well-crafted conspiracy theory does not satisfy the stringent pleading requirements for fraud in federal court.  At a minimum, the allegations in a complaint "must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted), and "state a claim for relief that is plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A securities fraud complaint must go even further and present a "cogent and compelling" inference that the defendants acted with the "intent to deceive, manipulate, or defraud," as required by Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 324 (2007).  Plaintiff's First Amended Complaint ("FAC") does not meet these standards.

The FAC's allegations show that Hanmi promptly disclosed concerns about an impaired $40.7 million loan as they were being discovered.  The FAC also alleges that Hanmi made repeated disclosures about the internal control deficiencies that prevented the bank from identifying the impaired loan sooner.  What the FAC does not – and cannot – allege is that Hanmi intended to defraud its shareholders with these numerous, detailed disclosures.  At its core, Plaintiff's claim is that Hanmi's originally anticipated $15.7 million loan loss reserve was inadequate in light of the $25.2 million loss that Hanmi ultimately incurred—but that does not amount to falsity or fraud.  *See In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993) ("The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made").  Critically, the FAC is devoid of any non-conclusory allegations about *when* Hanmi became aware of the full loss amount, or how its anticipatory statements were false at the time they were made.  While

5                                               Case No. 2:20-cv-02844

Plaintiff has dressed up the FAC by cobbling together lengthy block-quotes from various SEC filings with little explanation, length is no substitute for substance. Despite having already amended the complaint once, and having had 45 days to oppose Defendants' motion to dismiss ("Motion"), Plaintiff's counsel has not pointed to any new allegations that could cure these and other defects.  The FAC is insufficient to plead securities fraud and requires dismissal with prejudice.

**II.      FAR FROM MAKING FALSE STATEMENTS, HANMI REPEATEDLY DISCLOSED ITS INTERNAL CONTROL DEFICIENCIES AND ANTICIPATED LOAN LOSSES**

The FAC alleges, in conclusory fashion, that Hanmi Financial Corporation ("Hanmi") and two of its individual officers "took extraordinary actions to mislead investors about the Company's exposure to a $40 million troubled loan relationship."  (FAC ¶2.)  But the FAC is devoid of any *specific* factual allegations that plausibly support that claim.  In fact, Plaintiffs' allegations show just the opposite.

According to the FAC, Hanmi *promptly and repeatedly disclosed* issues with the impaired $40.7 million loan as they were being discovered.  Specifically, the FAC alleges that "[o]n July 19, 2019, Hanmi issued a press release announcing that the Company was delaying its earnings release and conference call for the quarter ending June 30, 2019, in order to evaluate adjustments to its ALLL [allowances for loan losses] requested by its banking examiner."  FAC ¶ 89.  Then, on August 12, 2019, Hanmi disclosed that it anticipated taking a $15.7 million loss provision in connection with the loan, and that this amount was "subject to change based on the completion of the financial statement closing."  *See* RJN Ex. A (8/12/19 Notification) at p. 2.  On October 4, 2019, Hanmi then disclosed – in its very first quarterly financial statement after the July 19, 2019 press release – that it had placed the entire loan on nonaccrual status, and was taking a corresponding $15.7 million specific loss provision.  FAC ¶ 8 (quoting from Hanmi's 2Q 2019 Form 10-Q).

Hanmi also provided *repeated disclosures* related to its internal control deficiencies. In its August 12, 2019 filing, Hanmi disclosed that it was "evaluating a possible internal control deficiency primarily relating to construction lending." FAC ¶ 48. On October 4, 2019, Hanmi then "admitted that the Company had a material weakness in internal controls over financial reporting and that the Company's disclosure controls and procedures were not effective." FAC ¶ 51. In a conference call on October 22, 2019, Hanmi further disclosed that "the material weakness that [Hanmi] cited in the filing of our second quarter Form 10-Q … will continue again for the third quarter." FAC ¶ 110. Hanmi also promptly disclosed a second internal control problem in its March 2, 2020 annual SEC filing. FAC ¶59. None of these allegations show that Hanmi attempted to hide these weaknesses or misled investors. To the contrary, they confirm that Hanmi was forthcoming in its public filings. Ironically, it is that very transparency that appears to have exposed Hanmi to frivolous securities litigation such as the instant suit.

Unable to claim Hanmi failed to disclose problems with its internal controls, Plaintiff instead asserts the internal control deficiencies *themselves* amount to securities fraud. This argument is meritless and should be disregarded. *See Oklahoma Firefighters Pension & Ret. System v. Ixia*, 50 F. Supp. 3d 1328, 1364 (C.D. Cal. 2014) ("allegations that [defendant] had deficient internal controls are insufficient to give rise to a strong inference of scienter"); *see also In re Loudeye Corp. Sec. Litig.,* 2007 WL 2404626, *7 (W.D. Wash. Aug. 17, 2007) (the fact that "controls were inadequate is perhaps an indication of incompetence, but incompetence, even gross incompetence, is no basis for a securities fraud claim").

## III. PLAINTIFF'S OPPOSITION IGNORES THE MOST RELEVANT AUTHORITIES REGARDING INADEQUATE LOAN LOSS RESERVES

Plaintiff argues that Hanmi's $15.7 million loss reserve for the loan was inadequate in light of the $25.2 million loss Hanmi ultimately incurred. But, in their

7

Motion, Defendants cited ample cases directly on point holding that inadequate loan loss reserves are ___not___ a valid basis to plead securities fraud.  (*See* Mot. at 20-21.)  Plaintiff does not even attempt to address these authorities in the Opposition – ostensibly because they are highly relevant to, and substantially undermine, the allegations in the FAC.

For example, in *Downey*, a securities fraud plaintiff alleged that a decline in Downey Financial Corp.'s shareholder value resulted from alleged misrepresentations made to the investing public by Downey's current and former officers and/or directors.  *In re Downey Sec. Litig*., No. CV 08-3261-JFW(RZX), 2009 WL 2767670, at *1 (C.D. Cal. Aug. 21, 2009).  Specifically, the complaint alleged that "Downey's loan loss reserves were understated because Downey's publicly disclosed financial metrics (*e.g.,* negative amortization, recasting of loans, delinquencies and foreclosures, non-accrual loans as a percentage of the reserve allowance, and declining housing prices) and the adjustments to the reserve levels during the Class Period indicate that the reserves were inadequate when set."  *Id*. at *4.

The court rejected these allegations as insufficient to show fraud because the plaintiff had not pleaded the requisite "factual allegations regarding Downey's loan loss reserves, *such as details about when and to what level the [loans] should have been written down, when and to what level the allowances should have been changed*, why the allowance made by the corporation was unreasonable in light of the bad debt experienced, and how many accounts ultimately were uncollectible."  *Id*. at *4 (emphasis added).  The court reiterated that "[m]erely alleging that bad debt reserves were inadequate is insufficient because even reasonable predictions turn out to be wrong.  Instead, *plaintiffs must allege with particularity facts that show the initial prediction was a falsehood*."  *Id*. at *5 (emphasis added) (citing *Alaska Elec. Pension Fund v. Adecco S.A.,* 434 F.Supp.2d 815, 823 (S.D.Cal.2006).)

Just as in *Downey*, the FAC alleges in conclusory terms that Hanmi's anticipated $15.7 million loan loss reserve – first announced in Hanmi's August 12, 2019 SEC filing[1] – was "misleading" because "the $15.7 million specific provision was less than the difference between the fair value of the troubled loans and the recorded investment." FAC ¶ 99. Yet the FAC nowhere alleges "when and to what level the loans should have been written down" or "when and to what level [Hanmi's] allowances should have been changed." *See Downey*, 2009 WL 2767670, at *4. The FAC alleges only that the original $15.7 million loss reserve turned out to be inadequate because Hanmi increased it by $6.9 million in January 2020, and by an additional $2.5 million in April, 2020. *See* FAC ¶¶ 9, 11. This is exactly what the plaintiff alleged in *Downey – i.e.*, that the defendant's initial loan loss reserve was insufficient in light of subsequent "adjustments to the reserve levels during the Class Period." *Downey*, 2009 WL 2767670, at *4.

Importantly, *Downey* is not an outlier case. Courts routinely dismiss securities fraud claims based on allegedly inadequate loan loss reserves. *See*, *e.g.*, *Tripp v. Indymac Fin. Inc*., 2007 WL 4591930, at *4 (C.D. Cal. Nov. 29, 2007) (dismissing securities fraud complaint based on allegations of inadequate loan loss reserves and internal control deficiencies); *see also In re Countrywide Fin. Corp. Derivative Litig*., 554 F.Supp.2d 1044, 1070 n. 28 (C.D. Cal. 2008) (holding that even an alleged "700% increase" in a defendant bank's loan loss reserves over a one-year period was insufficient to meet the heightened pleading requirements for securities fraud).[2]

---

[1] *See* Defendants' Request for Judicial Notice (RJN) Ex. A (8/12/19 Notification of Late Filing) at p. 2.

[2] *See also In re VeriFone Sec. Litig*., 11 F.3d 865, 871 (9th Cir. 1993) ("The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made."); *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92-93 (2d Cir. 2010) (Mere "allegations that

The FAC should be dismissed with prejudice for the very same reasons explained in *Downey* and *Tripp*.

## IV.   THE FAC'S ALLEGED GAAP VIOLATIONS DO NOT SUPPORT A SECURITIES FRAUD CLAIM

The Opposition largely focuses on Hanmi's purported GAAP violations during the class period.  *See* Opp. at 14, 17-20; FAC ¶¶ 66-84.  But, as Plaintiff concedes, a purported GAAP violation is not an actionable misstatement where the complaint fails to "allege enough information so that a court can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue."  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1017 (9th Cir. 2005); Opp. at 14.  Further, the law in the Ninth Circuit is clear that "the mere publication of inaccurate accounting figures, or *a failure to follow GAAP, without more, does not establish scienter*."  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994) (emphasis added) (citation omitted).[3]  The FAC's GAAP-related allegations do not and cannot give rise to a securities fraud claim, either as purportedly false statements or as a showing of scienter.

_____

defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud."); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999) (It is "clearly insufficient for plaintiffs to say that [a] later, sobering revelation[ ] make[s][an] earlier, cheerier statement a falsehood.") (alterations in original).

[3]   *See also DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) ("[M]ere allegations that an accountant negligently failed to closely review files or follow GAAP cannot raise a strong inference of scienter."); *In re Software Toolworks Inc.*, 50 F.3d 615, 628 (9th Cir. 1994) ("Scienter requires more than a misapplication of accounting principles.").

**A.      The FAC's GAAP-related allegations are vague and conclusory.**

As a threshold matter, the FAC's allegations about Hanmi's purported GAAP violations fail to adequately allege the nature of the violations, whether they "were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue." *Daou*, 411 F.3d at 1017.

First, the FAC makes the conclusory allegation that "Defendants violated ASC 310-10-35-41 by failing to charge off uncollectible portions of the troubled loan relationship until the first quarter of 2020." FAC ¶ 83. By way of explanation, Plaintiffs allege, in general terms, that "[a]llowance for loan and lease losses ('ALLL') is an estimate of probable losses that reduces the book value of loans and leases to the amount that is expected to be collected." FAC ¶ 32. But nothing in the FAC or Opposition provides a clear and concise explanation of what ASC 310-10-35-41 is, much less how Hanmi breached it. Instead, Plaintiffs vaguely assert that "[w]hen a loan is impaired, GAAP requires banks to measure the loss, disclose the loss to investors by recording a provision, and add the loss to the ALLL." *See* Opp. at 9 (citing ASC 310-10-35-16; ASC 310-10-35-41). Plaintiffs do not explain why this GAAP provision required Hanmi to write off its $25.2 million loss earlier than it did (in May 2020). For example, the FAC does not contain specifics about when Hanmi supposedly came to "expect" the full $25.2 million loss amount, who made the decision to supposedly delay charging off that entire amount until the first quarter of 2020, or why such a decision would be made. Nor does the Opposition cite any cases where ASC 310-10-35-41 was at issue.

Moreover, the FAC's allegations appear to be *consistent* with ASC 310-10-35-41. According to the FAC, Hanmi *did* announce an adjustment to its ALLL and *did* establish a specific loss reserve for the loan shortly after it discovered the impairment. Specifically, the FAC alleges that "[o]n July 19, 2019, Hanmi issued a press release announcing that the Company was delaying its earnings release and conference call for the quarter ending June 30, 2019, in order to evaluate

11

adjustments to its ALLL requested by its banking examiner." FAC ¶ 89. On August 12, 2019, Hanmi disclosed in its Notification of Late Filing that it anticipated taking a $15.7 million loan loss provision in connection with the loan. *See* RJN Ex. A (8/12/19 Notification of Late Filing) at p. 2. And, in its 2Q 2019 Form 10-Q filed on October 4, 2019, Hanmi disclosed that it had placed the entire loan on nonaccrual status and was taking a corresponding $15.7 million specific loss provision. FAC ¶ 8. It updated that amount in January, 2020 to $22.6 million, FAC ¶ 108, and in April 2020 to $25.2 million. FAC ¶ 108. The FAC does not allege with any specificity how these actions violated GAAP.

Second, the FAC alleges – also in conclusory language – that Hanmi violated accounting rule ASC 820-10-20 by using "upon-completion" appraisals, as opposed to "as-is" appraisals, to measure the fair value of the construction portion of the loan. FAC ¶84. But again, nowhere does Plaintiff explain how this alleged GAAP violation "constituted widespread and significant inflation of revenue," as opposed to being "minor or technical in nature." *See Daou*, 411 F.3d at 1017. Among other things, Plaintiff does not explain how an "as-is" appraisal of the collateral backing the loan would have resulted in a higher anticipated loss than Hanmi disclosed. Further, the Opposition cites no case law interpreting ASC 820-10-20, nor is the text of this purported GAAP provision cited anywhere in Plaintiff's papers.

### B.     Plaintiff Relies On Inapposite Authorities Related to GAAP.

Plaintiff attempts to circumvent the numerous cases holding that technical GAAP violations are not fraud by relying on inapposite and facially distinguishable cases where material GAAP violations were the *means* by which defendants falsely inflated revenue calculations. These cases do not apply and cannot salvage the FAC. In each of these cases, the GAAP violation was alleged to be the *vehicle* for the falsification of a material statement—the GAAP violation was not the falsity itself.

Foremost, in *Daou*, plaintiffs alleged that defendants "fraudulently inflated the price of its stock by reporting revenues before they were earned, in violation of GAAP." *Daou*, 411 F.3d at 1012. Unlike the FAC, the complaint in that case contained specific allegations about how the defendants had intentionally violated GAAP to falsely inflate revenue. *See id.* ("defendants systematically, without regard to labor costs incurred or estimated, recognized 20% of [their] contract revenue immediately upon signing products contracts, 40% of the contract revenue immediately after the equipment to be installed was ordered, and 50%–60% of the contract revenue as soon as the equipment was configured and tested"). Further, the complaint in *Daou* specified how the inflation of revenue (and corresponding GAAP violations) personally benefited the defendants. *See id.* ("because of such artificial inflation of the price of Daou stock, Daou was able to acquire eleven companies, and Daou executives and their respective family members were able to sell nearly 2.5 million shares for a total of $54.67 million in improper proceeds"). Here, the FAC does not allege that Hanmi recognized any revenue that it had not actually earned by violating GAAP, much less "widespread and significant inflation of revenue," as was the case in *Daou*. *Id.* at 1012. The FAC also does not allege how Hanmi benefitted from allegedly disclosing an inadequate loan loss reserve in violation of GAAP.

Plaintiff's other authorities are equally inapposite. In the Opposition, Plaintiff cites *Mulderrig v. Amyris, Inc.*, No. 19-CV-1765 YGR, 2020 WL 5903844, at *1 (N.D. Cal. Oct. 5, 2020). But *Amyris*, like *Daou*, was a revenue recognition case where an intentional GAAP violation resulted in a false inflation of revenue – not an inadequate loan loss reserve. The court in *Amyris* held that the securities fraud complaint was properly pleaded because defendants' financial disclosures were "***accompanied by and premised upon false representations of current revenue***" and "***defendants made false or misleading statements concerning material weaknesses in its internal controls***." *Id.* at *10 (emphasis added). Here, in stark

13

contrast to *Amyris*, the FAC alleges that Hanmi openly and repeatedly disclosed its internal control weaknesses. The FAC does not allege that Hanmi made any misrepresentations about its current revenue.

Indeed, the revenue recognition cases cited in the Opposition reference heightened pleading standards that Plaintiff has not even attempted to meet here. *See In re Capstone Turbine Corp. Sec. Litig.*, No. CV158914DMGRAOX, 2018 WL 836274, at *6 (C.D. Cal. Feb. 9, 2018) ("When pleading irregularities in revenue recognition, plaintiffs must allege (1) such basic details as the approximate amount by which revenues and earnings were overstated; (2) the products involved in the contingent transaction; (3) the dates of any of the transactions; or (4) the identities of any of the customers or [company] employees involved in the transactions.") (citing *Daou*, 411 F.3d at 1016-17). Plaintiffs' reliance on *Capstone*, *Daou*, and *Amyris* is misplaced.

Finally, the Opposition cites *S.E.C. v. Mozilo*, No. CV09-3994HFWNABX, 2009 WL 3807124, at *4–5 (C.D. Cal. Nov. 3, 2009) for the proposition that a "lender's statements touting its underwriting standards" can be "materially false and misleading." Opp. at 15. This is inapposite because the PSLRA's pleading standards do not apply to SEC enforcement actions. *See id.* at *13, fn.6 (C.D. Cal. Nov. 3, 2009). Moreover, *Mozilo* is based on starkly different facts than the FAC. There, the SEC instituted an action against senior executives of Countrywide for public statements they made in the period leading up to the subprime mortgage meltdown that caused the 2008 financial crisis. The executives had publicly stated that Countrywide had "backed away from the subprime area because of our concern over credit quality" when, in reality, it had not. *Mozilo*, 2009 WL 3807124, at *4. The SEC's complaint went on to include specifics: Countrywide allegedly "categorized loans as 'prime' even though they were issued to borrowers with FICO scores below 620"; "did not consider any FICO score too low to be included in its 'prime' category"; and stated that sub-prime mortgages were "a sound investment

14

for our Bank and a sound financial management tool for customers." *Id*. at *5. Meanwhile, "Defendant Mozilo and other members of senior management internally expressed grave concerns about the quality or viability of these loans." *Id*. at *5.

Even under a lower pleading standard, the allegations in *Mozilo* are far afield from Plaintiff's threadbare allegation that Hanmi "repeatedly described Hanmi's underwriting standards as 'conservative' and 'disciplined.'" *See* Opp. at 15 (citing FAC ¶¶100, 101, 109). Notably, there are no allegations in the FAC explaining how Hanmi's underwriting standards were riskier than reported, nor does the FAC allege that Hanmi's officers were aware of the impaired loan (or of Hanmi's internal control deficiencies) before they were disclosed.

Indeed, the FAC alleges that Hanmi was not even aware of its purported GAAP violations precisely because it suffered from internal control deficiencies. *See* FAC ¶78. Based on the FAC's allegations, *Downey* is the relevant authority, not *Daou* and the other inapposite cases cited in the Opposition.

## V. THE FAC'S ALLEGATIONS REGARDING "SUSPICIOUS" CHANGES IN HANMI'S PERSONNEL DO NOT SHOW FRAUD

The FAC's remaining allegations about "suspicious" changes in Hanmi's personnel are precisely the type of "speculative" allegations that fail to meet even minimal pleading standards, let alone the heightened standards applicable here. *See Twombly*, 550 U.S. at 555.

Foremost, the FAC alleges that Hanmi terminated KPMG as its outside auditor in June 2019 and hired Crowe LLP instead. FAC ¶¶ 44, 124. But this change allegedly occurred at the very same time that Hanmi learned about its internal control deficiencies from another source – its banking examiners. Specifically, the FAC alleges that "Hanmi admitted in a July 19, 2019 press release that the Company only became aware that one of the its largest loan relationships was impaired when its banking examiners informed them the Company was required to adjust the ALLL to account for the impairment. Given the severity of the

15                                    Case No. 2:20-cv-02844

omission, Defendants were forced to admit a material weakness in internal control over financial reporting from the lack of operating effectiveness of a control that allowed for the inadequate review of the fair value of collateral dependent impaired loans." *See* FAC ¶ 78.

As explained in the Motion, there is nothing "suspicious" about a bank terminating the auditor that was responsible for failing to identify its accounting problems. Indeed, in *Zucco*, the Ninth Circuit rejected the very same contentions that Plaintiffs are making here when it held that "***[t]he resignation of KPMG as [defendant's] independent accounting firm a month after the [disclosure] was issued is not surprising—it had just been partially responsible for the corporation's failure to adequately control its accounting procedures. This is not enough to support a strong inference of scienter.***" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009) (emphasis added). The Opposition ignores this holding entirely.

As to the allegedly "suspicious" departure of Hanmi's Chief Risk Officer later that year in 2019, the FAC fares no better. Plaintiff merely alleges that "[o]n November 18, 2019, Hanmi announced that its Chief Risk Officer, Jean Lim, was leaving the company. Lim had been Hanmi's CRO since August 2008." FAC ¶ 126. Plaintiffs do not allege "sufficient information to differentiate between a suspicious change in personnel and a benign one" with respect to Ms. Lim. *See Zucco*, 552 F.3d at 1002. Relatedly, the FAC's allegations that Mr. Santarosa took over Ms. Lim's authority over information technology does not create a "cogent and compelling" inference of scienter. *See* FAC ¶ 126; *Tellabs*, 551 U.S. at 324. Among other fatal problems, the FAC does not allege how or why Hanmi's internal control problem related to "information technology" had any impact whatsoever on its anticipated loss reserve or other disclosures regarding the loan.

Case No. 2:20-cv-02844

REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# VI.   PLAINTIFF'S OWN AUTHORITIES DEMONSTRATE THE INSUFFICIENCY OF THE FAC'S "FALSITY" ALLEGATIONS

Overall, the FAC employs a "puzzle-style" pleading that makes it difficult, if not impossible, to ascertain which statements contained in Hanmi's public statements were false or why.  *See* Mot. at 18-20.  Rather, the FAC quotes lengthy passages from Hanmi's public filings, then asserts, in conclusory fashion, that they contained false statements.

Plaintiff relies on readily distinguishable cases that actually highlight the deficiencies in the FAC.  For example, Plaintiff cites to *Endologix*, where the court found that "each quote [was] followed by an explanation why it is false or misleading" and that "***Plaintiff further narrowed the statements in issue by focusing her opposition on only a subset of them***."  *See Nguyen v. Endologix, Inc.*, No. 17-00017-AB (PLAX), 2018 WL 10321880, at \*4 (C.D. Cal. Sept. 6, 2018), *aff'd*, 962 F.3d 405 (9th Cir. 2020) (emphasis added).  In stark contrast to *Endologix*, Plaintiff does nothing to narrow the statements purportedly at issue here. The Opposition just asserts that "the false statements and explanations alleged in ¶¶97-98, 100-107, 108-112, 113-117 are easily identifiable even though some of the statements come from block quotations."  Opp. at  13.  The 12 paragraphs in the FAC alluded to in the Opposition include no fewer than 33 separate paragraphs from Hanmi's underlying disclosures.  But the Opposition (like the FAC) does not explain which of them are actionable, much less allege with specificity how or why any of the statements they contain were false.

Plaintiff also cites to *Murphy*, where the court held that the complaint in question was sufficiently specific because it included "***bold and italicized font to identify 'the actionable portions of each quote*,'**" as well as a "narrative to explain why a particular statement was false or misleading when it was made, and citations to the relevant paragraphs containing the statements.  *See Murphy v. Precision Castparts Corporation*, No. 3:16-CV-00521-SB, 2017 WL 3084274, at \*7 (D. Or.

17                                         Case No. 2:20-cv-02844

June 27, 2017). While the FAC contains bolded and italicized portions of quotes, there is no accompanying narrative of how or why the highlighted statements were false or misleading when made (as there was in *Murphy*). For example, the FAC quotes seven paragraphs from Hanmi's October 4, 2019 filing. FAC ¶ 98. Among these lengthy quotes, the FAC includes the following in bold print:

> *For the six months ended June 30, 2019, the provision for loan and lease losses was $17.8 and $0.7 million, respectively. The increase in the provision for loan and lease losses results principally from a $15.7 million specific allowance relating to a $40.7 million loan relationship added to nonaccrual loans in the 2019 second quarter.*
>
> *Classified loans and leases increased to $75.7 million at June 30, 2019, or 1.66 percent of total loans and leases receivable, from $29.5 million at December 31, 2018 principally because of the $40.7 million loan relationship placed on nonaccrual status during the three months ended June 30, 2019*

FAC ¶ 98 (emphasis original).

Yet the FAC does not allege with specificity how or why any of the foregoing statements was false or misleading. To the contrary, Plaintiff appears to take the position that these statements constituted true and correct disclosures.

## VII.   THE ABSENCE OF INSIDER STOCK SALES DURING THE CLASS PERIOD NEGATES SCIENTER

Plaintiff concedes that the FAC contains no allegations of any stock sales by either individual defendant (or other insider) during the class period. Plaintiff also concedes that – as alleged in the FAC – Mr. Santarosa actually "received a grant of 17,914 restricted shares in July 2019 in recognition of his expanded responsibilities." FAC ¶ 40. In other words, under Plaintiff's theory, Mr. Santarosa would qualify as a class member.

These concessions are fatal to the FAC. As discussed in the Motion, courts routinely hold that the absence of insider trading allegations negates a strong inference of scienter where there is no coherent theory of personal benefit to the named defendants. *See Downey*, 2009 WL 2767670 at *13 ("***a strong inference of***

18

Case No. 2:20-cv-02844

*scienter is negated when there is an absence of stock sales or where such sales are minimal*") (emphasis added); *In re Wet Seal, Inc. Sec. Litig.*, 518 F.Supp.2d 1148, 1177-78 (C.D. Cal. 2007) ("[W]hile allegations of insider sales are not required in securities fraud cases, … *the lack of any tangible, personal benefit here further weighs against the Officer Defendants having scienter*.") (emphasis added).

Once again, Plaintiff completely ignores these highly relevant authorities in the Opposition.

## VIII. THE FAC'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL

Plaintiff also does not contest that a Section 20(a) claim against a corporation's officers is unavailable where a securities fraud complaint fails to allege an underlying Section 10(b) claim. *See In re NVIDIA Corp. Secs. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014) (there can be no liability under Section 20(a) where underlying Section 10(b) claim was inadequately pleaded). The Opposition attempts to side-step this fundamental legal principle by asserting that the individual defendants were "knowledgeable" about the facts alleged in the FAC, are "control persons" of Hanmi, and signed Hanmi's Sarbanes-Oxley certifications in their SEC disclosures. Opp. at 15-16, 20, 24.

These arguments fail. For the reasons stated above, Plaintiff has failed to allege a plausible Section 10(b) claim against Hanmi and therefore cannot allege a Section 20(a) against the individual defendants. Moreover, the Ninth Circuit and its "sister circuits … have unanimously agreed that *allowing Sarbanes–Oxley certifications to create an inference of scienter in every case where there was an accounting error or auditing mistake made by a publicly traded company would eviscerat[e] the pleading requirements for scienter* set forth in the PSLRA." *Zucco Partners*, 552 F.3d at 1004 (internal citation and quotation marks omitted) (emphasis added). Thus, the FAC's allegations that Hanmi's SEC filings contained "certifications pursuant to the Sarbanes-Oxley Act of 2002 … signed by Defendants

19

Lee and Santarosa attesting to the accuracy of financial reporting," FAC ¶¶ 95, 97, "add nothing substantial to the scienter calculus" and should be disregarded. *Zucco*, 552 F.3d at 1004.

## IX. CONCLUSION

Plaintiff's First Amended Complaint should be dismissed with prejudice.

DATED: January 15, 2021

Respectfully submitted,

Ekwan E. Rhow
Naeun Rim
Darren L. Patrick
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: _*/s/ Darren L. Patrick*_
Darren L. Patrick
Attorneys for Defendant Hanmi Financial Corporation, Bonita I. Lee, and Romolo C. Santarosa

Case No. 2:20-cv-02844

REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT