Ekwan E. Rhow – State Bar No. 174604
　　erhow@birdmarella.com
Darren L. Patrick – State Bar No. 310727
　　dpatrick@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Naeun Rim – State Bar No. 263558
　　nrim@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Tel: (310) 312-4000
Fax: (310) 312-4224

*Attorneys for Defendants Hanmi Financial Corporation, Bonita I. Lee, Romolo C. Santarosa, and C. G. Kum*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILLYOUNG OH, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>HANMI FINANCIAL CORPORATION, BONITA I. LEE, ROMOLO C. SANTAROSA, and C. G. Kum,<br><br>　　　　　Defendants. | CASE NO. 2:20-cv-02844-FLA-JC<br><br>**CORRECTED[1] REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing<br>Date:　August 6, 2021<br>Time:　1:30 p.m.<br>Place:　Courtroom 6B<br>　　　　First Street Courthouse<br>　　　　350 West First Street<br>　　　　Los Angeles, CA 90012<br><br>Action Filed:  March 26, 2020<br>Assigned to Hon. Fernando L. Aenlle-Rocha |

---

[1]　Defendants respectfully submit this Corrected Reply, which conforms to the 15-page brief limit imposed by paragraph 6(e) of this Court's Initial Standing Order.  Filed concurrently herewith is a Notice of Errata with respect to Defendants' reply brief filed on July 21, 2021.

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 6

II.   THE SAC'S ALLEGATIONS CONCERNING HANMI'S "KNOWLEDGE" ARE CONCLUSORY AND SELF-CONTRADICTORY ............................................................................................. 7

III.  THE SAC'S OTHER "FALSITY" ALLEGATIONS ARE INSUFFICIENT TO PLEAD FRAUD ................................................................ 11

IV.   HANMI'S REPEATED DISCLOSURES DURING THE CLASS PERIOD STRONGLY NEGATE SCIENTER ................................................... 15

V.    PLAINTIFF MISCHARACTERIZES *LLOYD* AND RELIES ON INAPPOSITE AUTHORITIES REGARDING GAAP ................................ 15

VI.   THE SAC'S REMAINING SCIENTER ALLEGATIONS ARE INSUFFICIENT TO SHOW FRAUD .............................................................. 18

VII.  CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995) ........................................................................................ 19

*In re: Bofi Holding, Inc. Sec Litig.*,
    No. 3:15-CV-02324-GPC-KSC, 2016 WL 5390533 (S.D. Cal. Sept.
    27, 2016) ......................................................................................................... 12, 13

*In re Cadence Design Sys., Inc. Sec. Litig.*,
    692 F.Supp.2d 1181 (N.D. Cal. 2010) ..................................................................... 11

*Crafton v. Powerwave Techs., Inc.*,
    No. SACV 07-65 PSG (MLGx), 2008 WL 11338622, at *7 (C.D.
    Cal. Apr. 17, 2008) ........................................................................................... 18, 19

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ................................................................................. 19

*In re Downey Sec. Litig.*,
    No. CV 08-3261-JFW(RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21,
    2009) .................................................................................................................. 8, 18

*Fialkov v. Microsoft Corp.*,
    72 F.Supp.3d 1220 (D.C. Wash. 2014) ................................................................... 10

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ..................................................................................... 9

*Levin v. Res. Cap. Corp.*,
    No. 15 Civ. 7081 (LLS), 2016 WL 5867451 (S.D.N.Y. Oct. 5, 2016) .............. 14

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ................................................................................. 15

*Lloyd v. CVB Fin. Corp.*,
    No. CV 10-06256 MMM, 2012 WL 12883517 (C.D. Cal. Aug. 21,
    2012) ..................................................................................................... 7, 15, 16, 17

Case No. 2:20-cv-02844

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Lloyd v. CVB Fin. Corp.*,
   No. CV 10-06256 MMM, 2012 WL 12883522 (C.D. Cal. Jan. 12, 2012) ..................................................................................................... 16

*Lloyd v. CVB Fin. Corp.*,
   No. CV 10-06256 MMM, 2013 WL 12120506 (C.D. Cal. May 9, 2013) ........................................................................................... 14, 15, 16

*Longo v. OSI Sys., Inc.*,
   No. CV 17-8841 FMO, 2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ..................................................................................................... 19

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .......................................................... 6, 8, 10, 11

*In re Obalon Therapeutics, Inc.*,
   No. 3:18-CV-0352-AJB-WVG, 2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) .............................................................................................. 18

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ................................................................ 18

*S.E.C. v. Mozilo*,
   No. CV 09-3994-JFW, 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) ............... 13

*Sanders v. Realreal, Inc.*,
   No. 19-CV-07737-EJD, 2021 WL 1222625 (N.D. Cal. Mar. 31, 2021) ...................................................................................................... 12

*In re Silicon Graphics Inc., Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................. 7, 9

*In re Silicon Storage Technology, Inc.*,
   No. C 05-0295 PJH, 2006 WL 648683 (N.D. Cal. 2006) ................................ 10

*Strathclyde Pension Fund v. Bank OZK*,
   No. 4:18-CV-793-DPM, 2020 WL 1650834 (E.D. Ark. Apr. 3, 2020) ...................................................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ................................................................................. 6

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ................................................................ 10

4                                                        Case No. 2:20-cv-02844

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ............................................................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................... 6, 18, 19, 20

**Federal Statutes**

Private Securities Litigation Reform Act ("PSLRA") ................................. 6, 8, 9, 11

**Other Authorities**

Federal Rules of Civ. Proc., Rule 9(b) ...................................................... 6, 8

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

In its Opposition, Plaintiff parrots the insufficient allegations in the Second Amended Complaint ("SAC"), ignores Defendants' principal arguments for dismissal, mischaracterizes controlling Ninth Circuit authorities, and relies on case law that is plainly inapposite and readily distinguishable.  Despite having now had three bites at the apple, what Plaintiff does not do in the Opposition is show how the SAC states a cognizable securities fraud claim, or how it could do so by way of further amendment.

Critically, the Private Securities Litigation Reform Act ("PSLRA") – which was designed "to curb frivolous, lawyer-driven litigation" – imposes even higher standards for securities fraud complaints than the already-stringent pleading requirements of Rule 9(b).  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320-22 (2007) (citation omitted).  The Ninth Circuit has cautioned that a securities fraud complaint must not "mistake[] quantity for quality" in attempting to allege the existence of an actionable false statement.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) ("[T]he sheer volume of alleged false statements and claims … do not overcome the lack of specificity that the PSLRA requires.")  The Ninth Circuit has also cautioned that, when amending a securities fraud complaint, a plaintiff cannot "assume that compiling a large quantity of otherwise questionable allegations will create a strong inference of scienter through the complaint's emergent properties."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009).

The SAC does just what *Metzler* and *Zucco* caution against, and the Opposition does little to mitigate its deficiencies.  The SAC – despite its length – fails to meet the PSLRA's "exacting requirements for pleading falsity," *see Metzler*, 540 F.3d at 1070, nor does it present a "cogent and compelling" inference that the defendants acted with the "intent to deceive, manipulate, or defraud."  *See Tellabs,* 551 U.S. at 319, 324.  At best, Plaintiff's additional allegations suggest that

Defendants were negligent for having entered into the loan with Harrah, and for not having discovered its problems earlier.  Such allegations are insufficient to rise to the level of securities fraud, which requires an intent on the part of Defendants to deceive or cheat.  *See, e.g., Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2012 WL 12883517, at *18-19 (C.D. Cal. Aug. 21, 2012) (scienter "is not mere negligence").  Having now had the benefit of two rounds of briefing at the motion to dismiss stage, Plaintiff's pleading deficiencies are fatal.  The SAC must be denied with prejudice.

## II.   THE SAC'S ALLEGATIONS CONCERNING HANMI'S "KNOWLEDGE" ARE CONCLUSORY AND SELF-CONTRADICTORY

The SAC's fraud theory is that Hanmi purportedly "knew by the start of the Class Period in August 2018 that the collateral for the Broadway Loan—the undeveloped land—was worth less than the principal of the loan, which required Hanmi to impair the loan at the difference between the principal and the value of the collateral."  Opp. at 2; SAC ¶ 5.  As alleged in the SAC, the Broadway Loan was "collateral-dependent" and "repayment … was expected to be provided solely by the underlying collateral."  SAC ¶ 119.  Thus, Plaintiff's theory goes, Hanmi's SEC filings and other public statements during the class period were false because they did not reflect the "impaired" collateral value that Hanmi purportedly knew about.[2] These allegations fail to plead an actionable securities fraud claim for multiple reasons.

First, the SAC is devoid of specific allegations "reflecting the who, what, when, where, and how" of Hanmi's purported knowledge of the undeveloped land's actual value.  *See In re Silicon Graphics Inc., Sec. Litig.,* 183 F.3d 970, 998 (9th Cir.

---

[2]   Plaintiff repeats this basic allegation as to each of Hanmi's SEC filings during the class period.  *See*, *e.g*., SAC ¶ 173, 239, 273.

7   Case No. 2:20-cv-02844

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1999).  The SAC nowhere alleges what the undeveloped land was worth in March 2016 when the Broadway Loan was made.  The SAC does not allege what it was worth at the start of the Class Period in August 2018 or in December 2018, when Hanmi allegedly loaned an additional $15 million to Harrah.  SAC ¶ 57.  The SAC also does not allege what Harrah's car collection, which was used as collateral for the Caribou Loan, was worth – or even what Hanmi *believed* it to be worth – at the time of the loan in December 2018.  SAC ¶ 60.  At most, the SAC vaguely asserts that C.G. Kum allegedly "went to view the cars" at an unspecified time.[3]  SAC ¶ 295.  Accordingly, the SAC does not (and cannot) allege "when and to what level the loans should have been written down" on account of the undeveloped land's value, or "when and to what level [Hanmi's] allowances should have been changed" during the class period, as would be required to state a cognizable securities fraud claim.  *See In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZx), 2009 WL 2767670, at *4 (C.D. Cal. Aug. 21, 2009).  Having failed yet again to specify the who, what, where, when, and why with respect to Defendants' knowledge of the true value of any collateral, the SAC's allegations fail to meet the pleading standards of Rule 9(b), much less the "exacting requirements for pleading falsity" imposed by the PSLRA.  *See Metzler*, 540 F.3d at 1070.

Second, the SAC includes detailed allegations explaining why Hanmi was *not* aware of the collateral's insufficient value until July 2019 – *i.e.*, just before Hanmi publicly announced problems with the loan and its internal control deficiencies.  According to the SAC, Hanmi allegedly "did not have the required policy documentation describing the criteria for when collateral dependent impaired loan fair value is required."  SAC ¶ 299.  Hanmi allegedly "fail[ed] to adequately train its credit risk personnel on the collateral dependent impaired loan fair value review

---

[3] If anything, this allegation suggests Defendants were being prudent and personally wanted to inspect the potential collateral before approving changes to the loan.

process." SAC ¶ 301. And Hanmi allegedly "fail[ed] to require documentation when concluding a fair value review is not warranted." SAC ¶ 302. According to the SAC, these very "accounting violations *caused Defendants' failure to even identify the troubled loan relationship* for an impairment valuation" any earlier than July 2019. *See* SAC ¶ 299 (emphasis added). Thus, Plaintiff's own allegations show that Hanmi was unaware of the loan's impairment until just before it was scheduled to issue its financials for the end of June – *exactly when Hanmi began disclosing potential problems with the loan in its securities filings.*[4] *See, e.g.,* SAC ¶ 263. While Plaintiff tries to create the impression that Hanmi knew about the loan's impairment before it had even reviewed the loan, the SAC is devoid of fact-specific allegations to support this "hunch."

Third, the SAC impermissibly relies on a "fraud by hindsight" theory based on allegations that Hanmi ultimately recorded a $25.2 million loss for the loan on April 30, 2020 – the last day of the class period. According to the SAC, the April 2020 write-off was an "admission" that Hanmi knew the true value of the undeveloped land all along. *See* SAC ¶ 148 (alleging that Hanmi "eventually admitted when they charged off all but $13.2 million of the Broadway Loan, the fair value of the undeveloped land serving as collateral for the Broadway Loan was just $13.2 million."). The SAC makes similar conclusory allegations about Hanmi's purported "knowledge" of the value of Harrah's car collection, which served as additional collateral for the Caribou Loan. *See*, *e.g.*, SAC ¶ 273. These allegations are the very definition of "pleading fraud by hindsight" that "Congress enacted the PSLRA to put an end to." *See Silicon Graphics*, 183 F.3d at 988; *In re GlenFed,*

---

[4] On July 19, 2019, Hanmi first announced it was delaying its filings for the quarter ending June 30, 2019, to review the loan for possible impairment. SAC ¶ 10. In its next filing on August 12, 2019, Hanmi disclosed the internal control deficiency and announced an estimated $15.7 million loss for the loan. SAC ¶ 11; Dkt. 33-1 (Request for Judicial Notice), Ex. A (8/12/19 Notification) at p. 2.

*Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) ("[T]here is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false.")  A complaint must instead allege specific facts showing that a challenged statement was "false or misleading when made."  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1089 (9th Cir. 2002).[5]

The SAC attempts to remedy these pleading deficiencies by including extraneous, unrelated facts about the status of the One Broadway construction project.  *See*, *e.g.*, SAC ¶ 5.  These allegations, of course, have nothing to do with the value of the "*undeveloped land*" that Plaintiff alleges throughout the SAC was the "sole" expected source of repayment for the loan.  *See* SAC ¶¶ 119.  Nor do these allegations provide any clarity as to *when* Hanmi or any Defendant learned that the real value of the undeveloped land was less than the amount of the loan.  As for Plaintiff's contention that Hanmi "conceded the value of the undeveloped land was worth less than the principal of the Broadway Loan when they sought additional collateral in the Caribou Loan in December 2018," Opp. at 11, these conclusory allegations also do not meet the PSLRA's "exacting requirements" for pleading falsity.  *Metzler*, 540 F.3d at 1070.  And, as explained in the Motion, it is simply implausible that any bank would lend $41 million *knowing* that the only collateral

---

[5]   Indeed, the "Ninth Circuit has repeatedly reaffirmed" the fraud-by-hindsight rule, explaining that the fact that a company's 'forecast turned out to be incorrect does not retroactively make it a misrepresentation.'"  *Fialkov v. Microsoft Corp.*, 72 F.Supp.3d 1220, 1230 (D.C. Wash. 2014) (citation omitted); *see also In re Silicon Storage Technology, Inc.,* No. C 05-0295 PJH, 2006 WL 648683, at *7 (N.D. Cal. 2006) (rejecting as "fraud by hindsight" plaintiffs' allegations that "because [defendant] wrote down its inventory in December 2004, the statements about inventory made prior to that time must have been false because the inventory turned out not to be worth what [defendant] had previously said it was worth").

for the loan – the "undeveloped real property" – was only worth $13 million; or that a bank would accept a car collection as collateral for a $15 million loan *knowing* it was worth only $1.1 million. SAC ¶¶ 174, 207. Unable to explain why Hanmi would knowingly take such risks against its own self-interest, Plaintiff reverts to hindsight bias, pointing to steps Hanmi took to *strengthen* the loan's collateral base as "proof" of its impairment.

In the Opposition, Plaintiff argues that because Matthew Fuhr, Hanmi's Chief Credit Administration Officer, "personally handled" the Caribou Loan, his "knowledge can be imputed to both Hanmi and the Individual Defendants." Opp. at 19; *cf*. SAC ¶ 295. But again, the SAC does not even attempt to allege *what* Mr. Fuhr "knew" as he "personally handled" the Caribou Loan, when or how Mr. Fuhr learned of the true value of Hanmi's collateral, or why Mr. Fuhr would knowingly sign Hanmi up to lose millions of dollars on a deficient loan. As such, Plaintiff's reliance on *In re Cadence* for the proposition that an executive's knowledge can be "imputed" to the company is misplaced. *See In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F.Supp.2d 1181, 1189-92 (N.D. Cal. 2010) (executive who "gave specific instructions to re-structure" one of the company's contracts, for the express purpose of improperly recognizing its revenue, was sufficiently aware of the contract's terms and proper accounting treatment). Having failed to establish that Mr. Fuhr had the requisite knowledge to meet the PSLRA's standards, Plaintiff cannot rely on *Cadence* to "impute" that knowledge to Defendants.

## III.   THE SAC'S OTHER "FALSITY" ALLEGATIONS ARE INSUFFICIENT TO PLEAD FRAUD

The "sheer volume of alleged false statements and claims" in a securities fraud complaint cannot "overcome the lack of specificity that the PSLRA requires." *Metzler*, 540 F.3d at 1070. The SAC's remaining "falsity" allegations are insufficient. First, the SAC's allegations about Hanmi's "puffing" statements – including that it had "excellent asset quality" as of June 30, 2018, and that its "asset

11    Case No. 2:20-cv-02844

quality metrics" were "about as strong as you can get" – are not actionable. *See* Mot. at 15-16; *cf*. SAC ¶¶ 154-57, SAC ¶ 189.

In the Opposition, Plaintiff cites to *Sanders v. Realreal, Inc*., No. 19-CV-07737-EJD, 2021 WL 1222625, at *9 (N.D. Cal. Mar. 31, 2021), for the proposition that statements capable of "objective verification" are not "inactionable puffery." Opp. at 14.  Plaintiff contends that, during an investor call, Mr. Kum stated the "percentage of Hanmi's assets that were nonperforming," and that the number he gave was "verifiably false" because it did not take into account the purportedly "non-performing" Harrah loan. *Id*.  This argument fails because "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *In re Worlds of Wonder Sec. Litig*., 35 F.3d 1407, 1426 (9th Cir. 1994) (citation omitted).  *Realreal* is also readily distinguishable.  There, the defendant – an online marketplace that purportedly sold "authenticated, consigned luxury goods" – publicly stated that it "authenticate[d] every item posted to the online marketplace" using "in-house experts." *Realreal*, 2021 WL 1222625, at *1, *10, *11.  But the complaint specifically alleged that, in fact, the personnel who authenticated the goods were "copywriters ... not expert authenticators," and the "small group of authenticators employed by the company did not authenticate every item, or even most items," on the website. *Id*. at *10.  No such allegations are present here.

Next, the Opposition points to Mr. Kum's alleged statement that Hanmi "continued to maintain our normal conservative underwriting standards." Opp. at 14; *cf*. SAC ¶ 189.  Plaintiff contends this statement is actionable because, in making the Caribou Loan, Hanmi had allegedly relied on a "one-page" appraisal letter prepared by a third party who was – unbeknownst to Hanmi – a personal friend of Harrah's. *See* Opp. at 14-15 (citing *In re: Bofi Holding, Inc. Sec Litig*., No. 3:15-CV-02324-GPC-KSC, 2016 WL 5390533, at *9 (S.D. Cal. Sept. 27, 2016)).  Again, *Bofi* is readily distinguishable.  That complaint included "detailed

allegations" that a senior underwriter "described being pressured by senior management to underwrite loans that [he] felt uncomfortable approving," and that it "started to become very rare that we would deny a loan." *Id*. at *9-10. Under such particularized facts, it was misleading for the company to state that it "continued to adhere to conservative loan underwriting practices and … had not loosened credit guidelines in order to increase loan volume." *Id*. at *9. By contrast, the SAC nowhere alleges that Hanmi's underwriters disapproved of the Harrah loan, or that Hanmi was aware of the relationship between Harrah and the individual who appraised his car collection. Nor does the SAC alleged that Mr. Kum was aware of any deficiency in the appraisal process or underwriting standards at the time he made the statement. Hanmi's alleged failure to conduct its own appraisal of the cars points, at most, to negligence – not fraud. *See* Mot. at 15.

Finally, the Opposition cites *S.E.C. v. Mozilo*, No. CV 09-3994-JFW (MANx), 2009 WL 3807124, at *4–5 (C.D. Cal. Nov. 3, 2009), for the proposition that a "lender's statements touting its underwriting standards" can be "materially false and misleading." Opp. at 15. *Mozilo* is inapposite because the PSLRA's pleading standards are higher than the pleading standards that apply to SEC enforcement actions. *See id.* at *13, fn.6. Moreover, *Mozilo* is based on starkly different facts than the SAC. The executives had publicly stated that Countrywide had "backed away from the subprime area because of our concern over credit quality" when, in reality, it had not. *Mozilo*, 2009 WL 3807124, at *4. Countrywide stated that subprime mortgages were "a sound investment for our Bank and a sound financial management tool for customers" while, at the same time, "Defendant Mozilo and other members of senior management internally expressed grave concerns about the quality or viability of these loans." *Id*. at *5. The allegations in *Mozilo* are far afield from Plaintiff's threadbare allegation that Hanmi "repeatedly described Hanmi's underwriting standards as 'conservative.'" *See* Opp. at 14 (citing SAC ¶ 189).

13

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiffs cite next to Mr. Kum's purported statement, during an April 23, 2019 investor call, that an unrelated "$25 million commercial loan relationship" had "experienced a labor issue that has caused a business interruption." Opp. at 15; SAC ¶ 223. Mr. Kum allegedly stated that the loss in question was a "one-off issue" and "there are no other significant increases in the criticized or any other grade categories." SAC ¶ 223. But the SAC nowhere alleges that "labor issues" or "business interruption" were responsible for the alleged impairment of the Harrah loan, or that Mr. Kum was aware of the impairment.

The Opposition also fails to show that Hanmi's statement in its October 4, 2019 SEC filing that the Harrah loans were "current" was "materially misleading" or actionable. *See* Opp. at 15; *cf*. SAC ¶ 262. The SAC concedes that Harrah was making timely interest payments. SAC ¶ 112. Moreover, allegations that a lender "purportedly made certain loans appear 'current' for reporting purposes by extending loan due dates" are insufficient to plead fraud. *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2013 WL 12120506, at *1 (C.D. Cal. May 9, 2013). Finally, in the same October 4, 2019 filing, Hanmi disclosed the "entire" Harrah loan as a "nonperforming asset" on "nonaccrual status," and as a "troubled debt restructuring." SAC ¶ 13. Plaintiff is also incorrect that *Levin v. Res. Cap. Corp.*, No. 15 Civ. 7081 (LLS), 2016 WL 5867451, at *1 (S.D.N.Y. Oct. 5, 2016), is "particularly instructive" as to whether Hanmi's statement that the loans were "current" was materially misleading. Harrah continued to make interest payments; but in *Levin*, the lender had agreed to a loan modification under which the borrower "stopped paying interest on its loan." *Id*. at *1. Based on this plainly distinguishable fact, the lender's subsequent statement that the "borrower in financial difficulty was 'current' and 'performed' by not paying interest" was "counter-intuitive." *Id*. at *1.

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## IV.    HANMI'S REPEATED DISCLOSURES DURING THE CLASS PERIOD STRONGLY NEGATE SCIENTER

The SAC concedes that Hanmi repeatedly disclosed the internal control deficiencies that were allegedly responsible for its failure to identify the loan for impairment sooner than it did.  Specifically, "[o]n July 19, 2019, Hanmi issued a press release announcing that the Company was delaying its earnings release and conference call for the quarter ending June 30, 2019, in order to evaluate adjustments to its ALLL [allowances for loan losses] requested by its banking examiner."  SAC ¶ 10.  On August 12, 2019, Hanmi disclosed a "possible internal control deficiency primarily relating to construction lending," and that it anticipated taking a $15.7 million loss provision in connection with the loan.  SAC ¶ 11.  In its next quarterly financial statement on October 4, 2019, Hanmi announced it had placed the entire loan on nonaccrual status and was taking a corresponding $15.7 million specific loss provision.  SAC ¶¶ 13, 262.  These disclosures continued throughout the class period.  *See* Mot. at pp. 7-8.  Far from showing that Hanmi attempted to hide these weaknesses or misled investors, the SAC confirms that Hanmi was forthcoming in its public filings.

## V.    PLAINTIFF MISCHARACTERIZES *LLOYD* AND RELIES ON INAPPOSITE AUTHORITIES REGARDING GAAP

As discussed in the Motion, the district court in *Lloyd*, 2013 WL 12120506 (C.D. Cal. May 9, 2013) considered and rejected GAAP-related allegations that are nearly identical to those in the SAC – including that the defendant purportedly failed to classify a loan as a "troubled debt restructuring" in its SEC filings.  (Mot. at 12-13, 15-16.)  As the Opposition appears to concede, the Ninth Circuit affirmed *all* the holdings in the district court decision that Defendants rely on in their Motion.  *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1211 (9th Cir. 2016).  In its Opposition, Plaintiff vaguely asserts that "the allegations here are far stronger than those previously addressed by the Ninth Circuit."  (Opp. at 3.)  This argument is

15

Case No. 2:20-cv-02844

unavailing.

In *Lloyd*, the lender had allegedly restructured "more than $53 million" in loans at a time when the borrower was in "perilous financial condition," "on the verge of bankruptcy," "hanging on by a thread," and "behind on payments associated with prior loans." *Lloyd*, 2013 WL 12120506, at *2. The lender had made a second $10 million loan while the borrower was "already ninety days behind on payments associated with prior loans." *Id*. The lender had also allegedly "extended [the] lines of credit or refinancing packages on at least five occasions before and during the class period, sometimes in amounts as large as $53 million." *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2012 WL 12883522, at *18 (C.D. Cal. Jan. 12, 2012). These allegations are substantially similar to – indeed stronger than – those in the SAC.[6] And yet they were insufficient "to plead with particularity either falsity or scienter" because they *depend[ed] heavily on the assumption that defendants knew of problems in [its] loan portfolio during the early months of the class period*." *Lloyd*, 2013 WL 12120506, at *21-22 (emphasis added). That assumption – like the SAC's bare allegation that Hanmi "knew by the start of the Class Period in August 2018 that the collateral … was worth less than the principal of the loan," SAC ¶ 5 – was not enough to plead fraud. *Id.* at *22, fn.197 (noting that "the complaint does not plead facts showing that [lender] knew the $10 million loan was not adequately secured").

The Opposition's attempt to distinguish *Lloyd* on the grounds that the borrower in that case "continued to amortize the principal of the loans, while Harrah did not," is disingenuous. *See* Opp. at 24. As the SAC alleges, the Harrah loan was, from its inception, a "balloon" loan requiring interest-only payments until maturity. SAC ¶ 54. The SAC also acknowledges that Harrah was making the required interest payments, even in October 2019 when Hanmi placed the entire loan on

---

[6] *See*, *e.g.*, SAC ¶¶ 9, 33, 214.

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

"nonaccrual" status and identified it as a nonperforming asset in its SEC filings. SAC ¶ 262.  Plaintiff attempts to distinguish *Lloyd* on the basis that the defendants in that case "made efforts to disclose the situation in a timely manner."  *See* Opp. at 24 (citing *Lloyd*, 2013 WL 12120506, at *16).  But, as the SAC alleges, Hanmi *did* disclose problems with the loan – as well as an estimated $15.7 million loss – in August 2019, shortly after it allegedly learned of its internal control deficiencies for the first time.  *See* Mot. at 7-8.  Finally, the *Lloyd* court did not – as Plaintiff now asserts – reject plaintiff's "troubled debt restructuring" allegations solely because the complaint failed to allege a "concession" necessitating a "troubled debt restructuring" ("TDR") disclosure.  Opp. at 13.  The court dismissed the plaintiff's TDR claims for the additional reason that there was "no allegation that the additional loan was offered at a below market interest rate, *or that [the lender] knew it would not be repaid*."  *Id*. at *22 (emphasis added).  The SAC is similarly devoid of allegations showing that Hanmi's "knew" its collateral was insufficient.

Failing to distinguish *Lloyd* in any real way, the Opposition relies on a host of inapposite authorities.  Plaintiff contends that in *Strathclyde Pension Fund*, a district court denied dismissal based on facts "nearly identical to those alleged" in the SAC. Opp. at 13 (citing *Strathclyde Pension Fund v. Bank OZK*, No. 4:18-CV-793-DPM, 2020 WL 1650834, at *4 (E.D. Ark. Apr. 3, 2020)).  Not so.  In *Strathclyde*, the plaintiff specifically alleged how the bank was aware of a troubled loan that had been on its books for "nearly a decade."  *Id*. at *2.  The bank had internally "deliberat[ed] between forbearance and foreclosure," while repeatedly telling the public that the loan was "pristine."  *Id*.  Further, the bank's real estate division leader – who was "intimately involved" with the loan – suddenly "exercised [his] stock options and resigned" before the bank disclosed any problems.  *Id*.  The SAC alleges no basis for Hanmi's pre-disclosure knowledge, much less any internal foreclosure "deliberations," nor does it allege insider stock sales.  *See* Mot. at 22-23;

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Downey*, 2009 WL 2767670, at \*13 (A "strong inference of scienter is negated when there is an absence of stock sales or where such sales are minimal.").[7]

Plaintiff's reliance on *In re Obalon Therapeutics, Inc.*, No. 3:18-CV-0352-AJB-WVG, 2019 WL 4729461, at \*8 (S.D. Cal. Sept. 25, 2019), is equally misplaced because the complaint in that case "provide[d] the basic details such as the approximate amount by which revenues were overstated, and the transactions involved that led to the purported overstatement." *Id.* (citation and punctuation omitted). The SAC alleges no details about when Hanmi should have written down the loans, or in what amount. *See Downey*, 2009 WL 2767670, at \*4.[8]

## VI. THE SAC'S REMAINING SCIENTER ALLEGATIONS ARE INSUFFICIENT TO SHOW FRAUD

A plaintiff cannot "assume that compiling a large quantity of otherwise questionable allegations will create a strong inference of scienter." *Zucco*, 552 F.3d at 1008. The SAC's remaining scienter allegations mistake quantity for quality. First, the SAC's allegations that "Hanmi's executives were highly motivated to hide the troubled loans from investors because their bonuses were directly tied to Hanmi's ability to avoid nonperforming loans," SAC ¶ 311, are not actionable

---

[7]    Plaintiff contends that the "absence of insider trading allegations neither supports nor negates scienter," Opp. at 23, but the cases cited in the Opposition – including *Strathclyde* – show otherwise. *See id.*; *see also Crafton v. Powerwave Techs., Inc.*, No. SACV 07-65 PSG (MLGx), 2008 WL 11338622, at \*7 (C.D. Cal. Apr. 17, 2008) (finding scienter based on particularized allegations "***in conjunction with Plaintiffs' other allegations that Powerwave's executives engaged in insider stock sales***") (emphasis added).

[8]    *Provenz v. Miller* is yet another inapposite revenue-recognition case cited in the Opposition where "defendants recognized revenue before binding agreements existed and before contract requirements were completed," allegations that are not remotely similar to those in the SAC. *Provenz v. Miller*, 102 F.3d 1478, 1485 (9th Cir. 1996).

because the SAC "fails to provide specifically, with comparisons to prior years['] bonuses, the correlation between [the individual defendants'] compensation and [defendant's] bottom line." *Zucco*, 552 F.3d at 1005.[9] Moreover, Plaintiff appears to allege that Defendants knew about the loan's deficiencies at its *inception*, not simply that they hid the loan's impairment. It is simply not plausible that bank executives would be compensated for knowingly approving a loan backed by insufficient collateral that would ultimately cost the bank millions in losses. The Opposition cites *Longo v. OSI Sys., Inc.*, No. CV 17-8841 FMO (SKx), 2021 WL 1232678, at *8 (C.D. Cal. Mar. 31, 2021), as purported contrary authority that executive bonuses can be indicative of scienter. But in *Longo*, unlike the SAC, the plaintiff met the standards described in *Zucco* by specifically alleging that the individual defendant's "salary in 2017 was increased by approximately 14%" as a result of a fraudulent contract in which he was directly involved. *Id*. at *8, fn.8.

The SAC's allegations that Hanmi had a "motive" to keep its stock price high to consummate a merger with another bank, SAC ¶ 317, also cannot save the SAC from dismissal. *See* Mot. at 21-22. The Opposition's purported authorities to the contrary are readily distinguishable because they involved insider stock sales that are absent here. *See Crafton*, 2008 WL 11338622, at *7 (complaint alleged that defendants' executives "engaged in insider stock sales, benefited from a cash bonus program, and sought to increase stock price to purchase other companies"); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1024 (9th Cir. 2005) (finding scienter where, "in addition to the suspicious insider trading by defendants, other Daou executives as

---

[9] *See also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("Plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit. If scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.").

well as defendants' family members 'dumped' a grand total of 2.5 million shares of Daou stock during the class period at artificially inflated prices").

Finally, the SAC relies on nearly identical allegations about "suspicious personnel decisions" that the Ninth Circuit squarely rejected in *Zucco*. According to the SAC, Hanmi "abruptly" dismissed KPMG in June 2019 and hired Crowe LLP. SAC ¶¶ 306-07. Just as in *Zucco*, this alleged termination of KPMG occurred in the same month in which Hanmi allegedly "graded [the Loan] substandard and classified it as impaired." *See* FAC ¶ 62; *cf. Zucco*, 552 F.3d at 1002 *("[T]he resignation of KPMG as [defendant's] independent accounting firm a month after the [disclosure] was issued is not surprising—it had just been partially responsible for the corporation's failure to adequately control its accounting procedures. This is not enough to support a strong inference of scienter*.") (emphasis added).

In the Opposition, Plaintiff urges this Court to find that *Zucco* "further reinforces the inference of scienter" in this case because "the termination of KPMG strongly impl[ies] either that new management was trying to cover up the fraud or that the Bank had been recklessly misstating its revenues." Opp. at 21. Of course, the more plausible and indeed cogent explanation is that Hanmi acted responsibly in firing KPMG for failing to detect problems with the loan sooner. Finally, Plaintiff's argument about a "cover-up" is also contradicted by the SAC's own allegations that in August 2019 – just weeks after KPMG was terminated – Hanmi publicly disclosed the internal control deficiencies that its new auditor had identified, specifically tied these problems to "construction lending," and stated that it anticipated taking a $15.7 million loss on the loan. *See* Mot. at 8; SAC ¶ 11.

## VII.  CONCLUSION

For the reasons stated above and in the Motion, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

DATED:  July 23, 2021

Respectfully submitted,

Ekwan E. Rhow
Darren L. Patrick
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.


By:  _____*/s/ Darren L. Patrick*_____
Darren L. Patrick
*Attorneys for Defendant Hanmi Financial Corporation, Bonita I. Lee, Romolo C. Santarosa, and C. G. Kum*


Naeun Rim
MANATT, PHELPS & PHILLIPS, LLP


By:  _____*/s/ Naeun Rim*_____
Naeun Rim
*Attorneys for Defendant Hanmi Financial Corporation, Bonita I. Lee, Romolo C. Santarosa, and C. G. Kum*

Case No. 2:20-cv-02844

CORRECTED REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT