Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Daniel Tyre-Karp (*pro hac vice*)
Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: dtyrekarp@rosenlegal.com
Email: philkim@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KILLYOUNG OH, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>HANMI FINANCIAL CORPORATION, C. G. KUM, BONITA I. LEE, and ROMOLO C. SANTAROSA,<br><br>    Defendants. | Case No. 2:20-cv-02844-FLA-JC<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: September 6, 2024<br>Time: 1:30 p.m.<br>Courtroom: 6B<br>Judge: Fernando L. Aenlle-Rocha |

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................... 1

II.    CASE BACKGROUND........................................................................... 2

     A.    Plaintiff's Allegations.................................................................. 2

     B.    Procedural History and Settlement........................................... 3

III.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ..... 4

IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ....... 4

     A.    Plaintiff and Lead Counsel Adequately Represented the Settlement Class................................................................................................ 5

     B.    The Settlement is the Result of Arm's-Length Negotiations .............. 7

     C.    The Relief the Settlement Provides is Adequate, Given the Risk, Expense, Complexity, and Likely Duration of Further Litigation ...... 8

     D.    The Settlement Meets the Remaining Rule 23(e)(2) Factors............ 12

          1.    The Proposed Method for Distributing Relief is Effective ....... 12

          2.    The Proposed Award of Attorneys' Fees is Appropriate .......... 12

          3.    Other Agreements .................................................................... 12

          4.    All Settlement Class Members are Treated Equitably .............. 13

     E.    The Remaining Ninth Circuit Factors Support Final Approval ........ 14

          1.    The Amount Obtained in Settlement Supports Final Approval 14

          2.    The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval .................................. 16

          3.    Experienced Counsel's Recommendations .............................. 18

4. The Favorable Reaction of the Settlement Class Supports Approval ................................................................................ 19

V.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ........ 20

VI.  NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS..21

VII. CONCLUSION ........................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 818893 (S.D. Cal. Feb. 19, 2020)...........................................................22

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..........................................................18

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)....................................................................19

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ..................................................................................19

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ...........................................................4

*Glickenhaus & Co. v. Household Int'l, Inc.,*
787 F.3d 408 (7th Cir. 2015) ..................................................................................11

*Gordon v. Vanda Pharms. Inc.*,
2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ..........................................................7

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................*passim*

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................................5, 9

*Heritage Bond,*
2005 WL 1594389 .....................................................................................................15

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................15

*In re Aqua Metals, Inc. Sec. Litig.*,
2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ...........................................................16

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .......................................................15

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ........................................................7

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) .........................................................5

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..........................................................20

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................................................15

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................20

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................................9, 10, 18

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .........................................................9, 17, 22

*In re Linkedin User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ..............................8

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .....................................................................13, 16, 17

*In re NeoPharm, Inc. Sec. Litig.*,
705 F. Supp. 2d 946 (N.D. Ill. 2010) ...................................................................11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)..........................................................*passim*

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ................................................................................11

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..................................................................................18

*In re Puda Coal Sec. Inc., Litig.*,
30 F. Supp. 3d 230 (S.D.N.Y. 2014) ....................................................................11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .......................................................... 15

*In re Snap Sec. Litig.*,
    2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ............................................................ 15

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................. 9

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ................................................................................. 4

*In re Tesla, Inc. Sec. Litig.*,
    2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ........................................................... 11

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................. 9

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................... 20

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ......................................................... 16

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...............................................*passim*

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 1997530 (S.D. Cal. June 6, 2022) ..................................................... 15, 19

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................................... 8

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................... 18

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................................................... 5

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................. 17

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
2013 WL 6577020 (C.D. Cal. Dec. 5, 2013)..........................................................19

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019)............................................................6

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)..............................................................11, 18, 19

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ..................................................................................14

*Pace v. Quintanilla*,
2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ........................................................18

*Roberti v. OSI Sys, Inc.*,
2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)..............................................................7

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................7, 9, 21

*Salazar v. Midwest Servicing Grp., Inc.*,
2018 WL 3031503 (C.D. Cal. June 4, 2018)..............................................................9

*Sheikh v. Tesla, Inc.*,
2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ..........................................................17

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016)........................................................................7, 14

*Thomas v. MagnaChip Semiconductor Corp.*,
2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ........................................................13

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ......................................................................................8

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ....................................................15, 17

*Vinh Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014)............................................................13

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)........................................................... 8

**Statutes**

15 U.S.C. § 78u-4(a)(7) ............................................................................................ 21

**Rules**

Fed. R. Civ. P. 23.............................................................................................*passim*

**Other Authorities**

Manual for Complex Litigation (Third) § 30.44 (1995)............................................. 19

Lead Plaintiff Killyoung Oh ("Plaintiff") submits this memorandum in support of his Motion for Final Approval of the Settlement, Plan of Allocation, and Final Certification of the Settlement Class.[1]

## I.   INTRODUCTION

Plaintiff and Defendants Hanmi Financial Corporation ("Hanmi"), C. G. Kum, Bonita I. Lee, and Romolo C. Santarosa ("Defendants") settled this securities class action for $3,000,000 which, if approved, will recover approximately 11.86% of the maximum damages estimated by Plaintiff's expert. The Settlement, the product of arm's-length negotiations, is a fair, reasonable, and adequate result given the real risk that Plaintiff would not obtain a larger sum – or any recovery at all – if litigation were to continue.

As set forth below, the Settlement satisfies the standards set forth in Federal Rule of Civil Procedure ("Rule") 23 to ensure that a settlement is "fair, reasonable, and adequate" to class members as well as the Ninth Circuit's factors. Although Plaintiff's claims survived a motion to dismiss, proving them and obtaining a greater recovery would require prevailing at class certification, summary judgment, trial, and on appeal. Rather than engage in protracted litigation with no assurance of success, Plaintiff obtained a substantial, guaranteed recovery for investors which he and Lead Counsel believe is the best outcome for the Settlement Class. In light of the obstacles to recovery and the significant amount of time and expenses that continued litigation would entail, the Settlement is fair, reasonable, and adequate and merits Court approval.

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement ("Settlement") (Dkt. 79). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Tyre-Karp Decl." or "¶__" are to the Declaration of Daniel Tyre-Karp. Citations to "Ex. __" are to exhibits to the Tyre-Karp Decl. Citations to "Craig Decl." are to the Declaration of Margery Craig (Ex. 1). Citations to "Fee Brief" are to the Memorandum of Points and Authorities in Support of the Motion for an Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff.

1

The proposed Plan of Allocation ("Plan") was developed by Lead Counsel in consultation with an expert and the Claims Administrator, Strategic Claims Services ("SCS"). The Court should approve the Plan as fair and reasonable because it comports with applicable legal principles and Plaintiff's theory of damages and treats all Settlement Class Members equitably.

Following the Order Granting Motion for Preliminary Approval of Class Action Settlement [Dkt. 80] ("Order") (Dkt. 88), Notice was disseminated to 13,667 potential Settlement Class Members. Craig Decl., ¶9. The Notice program satisfies the requirements of both Rule 23 and due process. To date, no one has objected to or sought exclusion from the Settlement. This further demonstrates that the Settlement and Plan warrant approval.

Finally, the Settlement Class should be certified because it meets the requirements of Rule 23(a) and (b)(3).

## II.    CASE BACKGROUND

### A.    Plaintiff's Allegations

Hanmi is a bank holding company. Plaintiff alleges that Hanmi's financial statements throughout the Settlement Class Period materially overstated its income by concealing over $40,000,000 in nonperforming loans and over $25,000,000 in loan losses that were required to be disclosed under Generally Accepted Accounting Principles ("GAAP"). The loans in question were to developer Michael Harrah, who defaulted multiple times and for who Hanmi continually restructured the loans and accepted collateral worth less than the principal of the loans. Plaintiff further alleges that while they knew these important loans were not being met, Defendants touted Hanmi's "excellent" asset quality, claiming that its metrics were superior to those of peer banks.

Plaintiff alleges that Hanmi investors only began to learn about the underperforming loans in August 2019 when Hanmi's banking examiners forced Defendants to disclose them. Defendants, however, continued to mislead investors for

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

months. Plaintiff alleges that the full truth emerged on April 30, 2020, causing Hanmi's share price to fall 14.3% and about 60% during the Settlement Class Period.

Defendants dispute the allegations and believe Hanmi's disclosures were accurate, vetted and approved by reputable auditors and consistent with GAAP. Defendants also assert that Plaintiff lacked evidence sufficient to establish scienter, causation, and damages.

### B. Procedural History and Settlement

Plaintiff initiated the action, alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934. On July 21, 2020, Judge Andre Birotte, Jr. appointed Plaintiff as Lead Plaintiff and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. On September 17, 2020, Plaintiff filed an amended complaint. Defendants filed a motion to dismiss, which was fully briefed. On December 30, 2020, the Action was transferred to Judge Fernando L. Aenlle-Rocha. On March 17, 2021, the Court granted the motion to dismiss, permitting Plaintiff leave to amend. Plaintiff timely filed the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC"). On April 15, 2021, the Parties submitted a Joint Rule 26(f) Report. On May 21, 2021, Defendants filed their motion to dismiss the SAC, which was fully briefed. On August 19, 2022, the Court denied the motion to dismiss the SAC. Defendants subsequently filed their Answer and the Parties began to initiate discovery.

The Parties decided to explore mediation, retaining Jed Melnick of JAMS, a well-respected mediator with experience mediating securities class actions. Prior to the mediation, the Parties exchanged detailed mediation statements. Although the March 2, 2023 mediation session was unsuccessful, the Parties continued negotiations with Mr. Melnick's assistance over the following weeks. Eventually, on March 24, 2023, the Parties reached an agreement in principle and later executed a binding Term Sheet setting forth the material terms of the Settlement.

Plaintiff moved for preliminary approval of the Settlement on June 23, 2023. (Dkt. 80). The Court entered the Order on March 19, 2024, granting preliminary

approval and directing SCS to issue notice of the Settlement to Settlement Class Members. (Dkt. 88).

## III. CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

Certification of the Settlement Class under Rule 23 is merited here. Having Plaintiff's memorandum in support of preliminary approval (Dkt. 81, 4-10), the Court thoroughly analyzed Plaintiff's satisfaction of the requirements of Rule 23(a) and (b), before preliminarily certifying the Settlement Class. (Dkt. 88, 5-8). Nothing has transpired since preliminary approval was granted that would alter those findings. Thus, the Court should grant final certification of the Settlement Class. *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022) (incorporating by reference Rule 23(a) and (b) analysis from preliminary approval as no facts had changed).

## IV. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Under Rule 23(e)(2), court approval is warranted if a settlement is "fair, reasonable, and adequate" taking into consideration whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These factors do not "displace any factor [courts apply], but rather [focus] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Jiangchen v. Rentech, Inc.*, 2019

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

WL 5173771, at \*4 (C.D. Cal. Oct. 10, 2019) (citing advisory committee notes, 324 F.R.D. 904, 918). "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with Rule 23(e)(2)'s requirements: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Here, Rule 23(e) and the Ninth Circuit factors weigh in favor of final approval.[2]

### A.   Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Pursuant to Rule 23(e)(2)(A), courts must consider whether the "class representatives and class counsel have adequately represented the class." The Ninth Circuit requires courts to inquire: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Plaintiff and Lead Counsel have adequately represented the Settlement Class.

---

[2] As with the certification analysis, the Court's prior analysis of the Rule 23(e) and Ninth Circuit factors are "equally in favor of final approval now." *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 2554232, at \*2 (N.D. Cal. May 3, 2019) (adopting earlier conclusions in granting final approval).

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

The Court found that "[t]he course of the proceedings indicates Plaintiff and Rosen Law have adequately represented the class in this action[.]" Order, 8:24-26. Plaintiff has no antagonistic interests to other class members. His claims are typical of Settlement Class Members' claims and Plaintiff shares an interest with the other investors in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff[s'] claims are typical of and coextensive with the claims of the Settlement Class, [their] interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Moreover, Plaintiff worked closely with Lead Counsel to obtain the best possible result for the Settlement Class. Ex. 3 (Oh Declaration).

Plaintiff retained counsel who are highly experienced, with a long and successful track record of representing investors in securities class actions and complex litigation. Ex. 4-F (firm resume). In assessing Lead Counsel's adequacy with its Rule 23 analysis, the Court previously held that "Counsel has been diligent in pursuing this action since filing the Complaint." Order, 7:7. Further, the Court noted that "Settlement was reached after counsel vigorously litigated this matter, with the Complaint having been filed nearly four years ago." *Id.*, 8:19-20. During this litigation, Lead Counsel: (i) reviewed and analyzed Hanmi's SEC filings, press releases, and other public statements; (ii) reviewed and analyzed documents, reports, announcements, and news articles concerning Hanmi; (iii) retained an accounting expert and an investigator to interview former Hanmi employees; (iv) drafted several complaints including the initial complaint, an amended complaint, and the SAC; (v) reviewed filings from the actions *Hanmi Bank v. Harrah, et. al.*, Case No. 20STCV39589 and *Hanmi Bank v. Caribou Ind.*, Case No. 20STCV39491 pending in Los Angeles County Superior Court ("State Actions"), to add allegations in the SAC as the State Actions concerned the specific underperforming loans at issue in this Action; (vi) opposed two motions to dismiss; (vii) began to engage in written and documentary discovery, including

propounding document request, interrogatories, and subpoenas; and (viii) negotiated the Settlement that included preparing mediation statements and participating in a mediation. ¶18.

Accordingly, Plaintiff and Lead Counsel have adequately represented the Settlement Class.

**B.      The Settlement is the Result of Arm's-Length Negotiations**

Rule 23(e)(2)(B) inquires whether "the propos[ed settlement] was negotiated at arm's length." Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Roberti v. OSI Sys, Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015).

The Court previously recognized that "the settlement agreement was the product of 'serious, informed, non-collusive negotiations.'" Order, 8:56-27 (citing *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016). Here, the Parties selected Mr. Melnick as mediator because of his considerable experience mediating securities class actions. Melnick Decl., ¶4 (Ex. 2). Mr. Melnick's participation in achieving the Settlement underscores that it is the product of non-collusive, arm's-length negotiations. *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (settlement reached with mediation before Mr. Melnick weighs in favor of approval); *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (same). In his declaration, Mr. Melnick attests to the integrity of the mediation process finding that the negotiations were at all times adversarial and conducted at arm's-length. *Id.*, ¶¶7-12. With Mr. Melnick's guidance over the mediation process, including negotiations in the subsequent weeks after the mediation, the Parties reached the Settlement. *Id.*, ¶11. Although the Court will determine whether the Settlement should be approved, Mr. Melnick recommends that the Settlement is a "fair and pragmatic resolution of this Action." *Id.*, ¶7.

As detailed in Section IV.E.3, all counsel in this Action are knowledgeable securities class action practitioners. Thus, the arm's-length negotiations favor final approval of the Settlement.

### C.     The Relief the Settlement Provides is Adequate, Given the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In granting preliminary approval, the Court found that "[t]he settlement and relief provided appear adequate considering the factors set forth by Rule 23(e)(2)(C)." Order, 9:3-4. The Court recognized that "there is a risk to both parties in continuing toward trial[,]" that "the parties reached settlement after almost four years of litigation[,]" and there would be "additional litigation costs, risks, and delay of trial and appeal[.]" *Id.*, 9:3-5; 9:13-14. The Court should affirm these determinations.

Rule 23(e)(2)(C)(i) requires courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors (discussed in Section IV.E,). This requirement incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status through the trial. *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021) (*citing Hanlon*, 150 F.3d at 1026). Each factor supports approval of the Settlement.

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375–76 (9th Cir. 1993) (so holding). Essentially, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

Because Plaintiff faces procedural hurdles that could defeat a class action, courts recognize "securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain." *Hefler*, 2018 WL 6619983, at \*13; *Rentech*, 2019 WL 5173771, at \*6 ("securities fraud class actions are complex cases that are time-consuming and difficult to prove."); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) ("it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("the issues of scienter and causation are complex and difficult to establish at trial.").

While Plaintiff believes his case is meritorious, he remains cognizant of the substantial risk posed to the Settlement Class in continuing to litigate this action including class certification, discovery, summary judgment, trial, appeals, and recovering a judgment. *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing instances where settlement was rejected by a court only to have ultimate recovery be less than the proposed settlement). Consequently, a settlement's "elimination of risk, delay, and further expenses weighs in favor of approval," *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at \*6 (C.D. Cal. June 4, 2018), especially where the case is "complex and likely to be expensive and lengthy to try." *Rodriguez,* 563 F.3d at 966. The Settlement offers a favorable, immediate, and guaranteed recovery eliminating the risk, delay, and expense of continued litigation.

Proving a claim is different from pleading one. Here, Defendants contest the entirety of Plaintiff's claims. Defendants contend: (i) Hanmi's disclosures were consistent with GAAP and approved by independent auditors; and (ii) Plaintiff lacks evidence to prove scienter, loss causation, and damages. Further litigation and potential

9

trial would risk Plaintiff facing a jury that could ultimately side completely with Defendants, finding no evidence of fraud.

Although not yet filed, Plaintiff believes class certification is warranted. However, the Court could have ruled otherwise. Class certification requires retaining market efficiency experts and taking and defending depositions. Ultimately, efforts to achieve class certification would be costly and not guaranteed to succeed. If Plaintiff failed to obtain class certification, the benefit to the Settlement Class would be eliminated. Moreover, Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (approving settlement and noting "there is no guarantee th[at] certification would survive through trial"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Further, even if a class was certified, Plaintiff would still need to prove his claims. At the time of the Settlement, the Parties were beginning discovery. Continued discovery would have been lengthy and costly, requiring extensive document productions, depositions of numerous witnesses, and document hosting services. After fact discovery, the Parties would engage in expert discovery on the questions of loss causation and damages, as well as other areas such as the application of accounting standards. Defendants would present their own expert testimony to demonstrate that the financial statements complied with GAAP, the revelation of the alleged fraud did not cause the alleged stock drops, and/or that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the alleged fraud. ¶17. Given dueling expert reports, there would likely be *Daubert* motions. All told, expert discovery and trial preparation would prove to be expensive and complex. *Heritage Bond*, 2005 WL 1594403, at *6.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

Moreover, surviving summary judgment is uncertain because Defendants need only prevail on one element of Plaintiff's claims. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (no triable issue of fact on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment on falsity and scienter). There is also a risk that Plaintiff may have an expert excluded, damaging their case. *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

At trial, even if Plaintiff presented a convincing case, a jury may decide in Defendants' favor. *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559, at *21 (N.D. Cal. Apr. 1, 2022) (defense verdict even after summary judgment was entered in plaintiffs' favor on the elements of falsity and scienter) (Ex. 8). Further, a jury verdict in Plaintiff's favor could be overturned by the Court on a post-trial motion. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).

Accordingly, the likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results"). Without a settlement, there exists the real possibility that Plaintiff would spend years litigating the case to a verdict, and beyond, only to recover nothing. Balancing the specific risks, costs and potential delay, the Settlement is a reasonable and adequate recovery that is in the Settlement Class's best interests.

**D. The Settlement Meets the Remaining Rule 23(e)(2) Factors**

**1. The Proposed Method for Distributing Relief is Effective**

Rule 23(e)(2)(C)(ii) requires consideration of the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. On preliminary approval, the Court noted that the "proposed method of relief of distribution is straightforward and effective." Order, 9:16-17. This finding should be upheld. The Claim Form requires Settlement Class Members to provide information necessary to calculate their claims pursuant to the Plan. During the claim review process, SCS will allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claim(s), and, lastly, send Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It is effective and necessary, as neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.

**2. The Proposed Award of Attorneys' Fees is Appropriate**

Rule 23(e)(2)(C)(iii) also addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the Fee Brief, Lead Counsel seeks an award of attorneys' fees of one-third of the Settlement Amount, plus interest, and expenses of $65,850.85, plus interest. This fee request, fully disclosed in the Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, Section III(C)(5). The Court previously held that this fee request is "reasonable" and "finds these terms [approving attorneys' fees of one-third of the Settlement] appropriate." Order, 9:23, 10:5-6.

**3. Other Agreements**

Rule 23(e)(2)(C)(iv) requires disclosure of any agreement made in connection with the proposed Settlement. As disclosed, the Parties entered into a Supplemental Agreement giving Defendants the right to terminate the Settlement if Settlement Class

Members holding more than a certain number of shares opt-out. "To prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts," *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at \*5 (N.D. Cal. Oct. 20, 2017), the number of shares that trigger the right to terminate has not been disclosed to Settlement Class Members. Such agreements are commonly entered into in securities class action settlements and pose no obstacle to final approval of the Settlement. *Rentech*, 2019 WL 5173771, at \*7.

### 4. All Settlement Class Members are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another. On preliminary approval, the Court stated that it "finds the settlement does not provide improperly preferential treatment to any Class Members. The settlement tailors the appointment of relief among Class Members based on when each investor purchased, acquired, and/or sold Hamni common stock." Order, 10:12-15.

Nothing in the Plan has been altered since preliminary approval. The Plan determines how the money is distributed to all Authorized Claimants, and provides no preferential treatment to Plaintiff. The Settlement Fund is distributed *pro rata* to Authorized Claimants based on their recognized losses resulting from the stock price declines during the Settlement Class Period, as the SAC alleged. Lead Counsel developed the Plan in consultation with Plaintiff's damages expert. ¶20. The Plan is similar to others that are routinely approved. *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at \*5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

Apart from his *pro rata* recovery, Plaintiff will seek reimbursement of costs he incurred representing the Settlement Class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming reimbursement to class representative in securities class action settlement).

### E. The Remaining Ninth Circuit Factors Support Final Approval

In *Hanlon*, 150 F.3d 1011, the Ninth Circuit identified additional factors not co-extensive with Rule 23(e)(2): amount offered in settlement; extent of discovery completed, the stage of the proceedings; experience and views of counsel; presence of a governmental participant; and reaction of the class members to the proposed settlement.[3] These remaining factors all weight in favor of final approval.

### 1. The Amount Obtained in Settlement Supports Final Approval

Whether the Settlement amount is reasonable is not determined by plugging values into a mathematical equation. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Although a larger recovery is theoretically possible, the Settlement's benefits must be tempered by recognizing that any compromise involves concessions on the part of all parties. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624; *Spann,* 314 F.R.D. at 325. There is no guarantee that Plaintiff could secure a judgment at or near the full amount of the class-wide damages he estimates.

Moreover, because estimating aggregate damages can be challenging due to, *inter alia*, assumptions that must be made regarding trading activity, a jury may credit Defendants' expert and greatly reduce any damages awarded. Class-wide damages

---

[3] There were no government participants.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

could be denied entirely if the Court, the jury, or an appellate court were to accept some or all of Defendants' defenses, including that certain statements are not actionable or that class members' losses are attributable to causes other than the alleged misstatements or omissions. *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiff carefully considered these risks to a greater recovery – or any recovery at all.

The $3,000,000 Settlement Amount is reasonable and warrants preliminary approval. The Settlement recovers approximately 11.86% of the maximum estimated damages of $25,300,000 under Plaintiff's best-case scenario, as estimated by Plaintiff's damages expert. This best-case scenario assumes that: (i) Plaintiff is able to succeed at summary judgment and at trial; (ii) the Court certifies the same class period as the Settlement Class Period; and (iii) the Court and jury accept Plaintiff's damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages.

The Settlement's recovery compares favorably to recoveries in other securities class action settlements in this Circuit. *See, In re Snap Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (settlement represented "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (3.49%); *Omnivision*, 559 F. Supp. 2d at 1042 (9%); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (8%); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (1.99%); *Heritage Bond*, 2005 WL 1594389, at *8 (noting recoveries between 2% to 3%); *Vataj v. Johnson*, 2021 WL 5161927, at *6, *9 (N.D. Cal. Nov. 5, 2021) (2%); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (between 5% and

9.5%); *In re Aqua Metals, Inc. Sec. Litig.*, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) (7.3%).

Further, the Settlement compares favorably to recent recoveries in similarly sized cases. According to Cornerstone Research, the median recovery in cases such as this one alleging Rule 10b-5 claims with $25,000,000-$74,000,000 in maximum estimated damages was approximately 8.5% of estimated damages in 2022, and 7.4% between 2013-2023. (Ex. 6, Fig. 5). Between 2019-2023, securities class actions that settled after a ruling on a motion to dismiss but before a class certification motion was filed recovered a median of 4.7% of estimated damages. *Id.*, Fig. 13. Additionally, NERA Economic Consulting concluded that between January 2013 and December 2022, for cases with losses between $20,000,000-$49,000,000, the median settlement value as a percentage of losses was 5.2%. (Ex. 7, Fig. 18).[4] In 2022, the median recovery in securities class actions was approximately 1.8%. *Id.*, Fig. 19. Considering the extent of the recovery, as well as risks associated with continued litigation and the time and expense that would be required to prosecute the Action through a trial, the Settlement is a reasonable and adequate recovery for the Settlement Class.

**2. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval**

Courts also assess settlements based upon the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

---

[4] The Cornerstone and NERA reports published in 2023 are cited as the Settlement was reached in 2023.

Consequently, settlements reached in the early stages of a case are approved where an informed decision is made after a thorough investigation. *See, e.g., Mego*, 213 F.3d at 459 (class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (after the filing of a motion to dismiss and prior to significant discovery); *Immune Response*, 497 F. Supp. 2d at 1174 (investigation provided sufficient understanding of merits even though the PSLRA precluded discovery); *Sheikh v. Tesla, Inc.*, 2018 WL 5794532, at *5 (N.D. Cal. Nov. 2, 2018) ("[l]ittle formal discovery had been completed at the time of settlement").

During the PSLRA-mandated discovery stay, Lead Counsel: (i) reviewed Hanmi's SEC filings, press releases, conference calls, and other public statements; (ii) reviewed public documents, reports, announcements, and news articles concerning Hanmi including analysts' reports; (iii) retained an investigator and an accounting expert; (iv) reviewed and incorporated information into the SAC filings from the State Actions; (v) researched and drafted several amended complaints; and (vi) briefed two motions to dismiss. ¶8.

Although formal discovery was in its early stages at the time of the Settlement, Plaintiff was in a position to evaluate the strength of the Settlement Class's claims and Defendants' defenses when he agreed to the Settlement. *Vataj,* 2021 WL 5161927, at *7 (counsel "entered the settlement discussions with a substantial understanding of the factual and legal issues … to assess the likelihood of success on the merits" prior to motion to dismiss decision). Plaintiff had the benefit of the Court's dismissal opinion, Defendants' mediation statement, the filings in the State Actions, and some discovery to assess the Settlement. As a result, Plaintiff and Lead Counsel gained sufficient information to evaluate the Settlement before additional time and resources were expended on further litigation.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL; 2:20-cv-02844-FLA-JC

### 3. Experienced Counsel's Recommendations

As counsel "are most closely acquainted with the facts of the underlying litigation," courts accord "great weight" to the recommendation of experienced and informed counsel in support of the settlement. *DIRECTV*, 221 F.R.D. at 528; *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *Heritage Bond*, 2005 WL 1594403, at *9 (in a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation").

Given their experience and familiarity with the Action, Lead Counsel's recommendation of the Settlement supports final approval. Rosen Law's experience and reputation allowed it to leverage the credible threat of further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. Courts in this District, as well as others, have recognized that Rosen Law "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is highly qualified [and] experienced in securities class actions"); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (securing $250,000,000 settlement – the largest ever with a Chinese issuer, the court noted that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."); *see also* Ex. 4-F. Additional counsel, Glancy Prongay & Murray LLP, also has substantial experience litigating securities class actions on behalf of investors. (Ex. 5-E, Wolke Fee Declaration); ¶26. Thus, Lead Counsel's experience supports approval. Likewise, Defense Counsel, Manatt, Phelps & Phillips, LLP and Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C., zealously represented its clients at all stages of the litigation and were knowledgeable about the merits of the case.

Finally, Plaintiff's support for the Settlement (Ex. 3) should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DIRECTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).

### 4. The Favorable Reaction of the Settlement Class Supports Approval

The reaction of the Settlement Class strongly supports final approval. To date, 13,667 potential Settlement Class Members were notified of the Settlement by mailed Postcard Notice and/or by emailed link to the Long Notice and Claim Form. Craig Decl. ¶9. In response to the notice program, there have been no objections to or requests for exclusion from the Settlement. *Id*., ¶¶13-14; ¶23.

The absence of objections to and requests for exclusion from a proposed class action settlement supports approval. *Kendall*, 2022 WL 1997530, at *6; *Omnivision*, 559 F. Supp. 2d at 1043; *DIRECTV,* 221 F.R.D. 529 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement when 0.56% of eligible class members requested exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion requests representing 4.86% of class supports approval.); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports approval). "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. Accordingly, the absence of any objections and exclusion requests supports final approval.

The deadline to file objections to or request exclusion from the Settlement is August 16, 2024. Plaintiff will respond to objections or exclusion requests, if any, in his reply.

## V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Court preliminarily approved the Plan, which was detailed in the Long Notice. Plaintiff now requests that the Court grant final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Hanmi common stock. Plaintiff worked with the Claims Administrator to develop the Plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. ¶¶20-21.

Because the Plan mirrors the SAC's allegations, plans are rational when they "allocate money depending on the timing of purchases and sales of the securities at issue." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (plan is "even handed" because "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares"). Here, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund based on the claimant's recognized loss as calculated in accordance

with the Plan. ¶20. There have been no objections to the Plan. ¶23; Craig Decl. ¶14. The Plan fairly compensates Settlement Class Members and should be approved.

## VI. NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS

Plaintiff provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved. The Order established a plan to provide notice to potential Settlement Class Members (Order, 4:12-19), which was "sufficient and practical[.]" *Id.*, 11:26. As directed in the Order, SCS caused links to the webpage hosting the Long Notice and Claim Form to be emailed to persons for whom email addresses were obtained; if email addresses could not be reasonably obtained, the Postcard Notice was mailed to all those who could be identified with reasonable effort; and publication of the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. Craig Decl. ¶¶3-10. Following this robust notice program, 13,667 notices were mailed and/or emailed to potential Settlement Class Members. *Id*., ¶9.

The Court noted that "the proposed Notice contains the information required under Rule 23(c)(2)(B) and the PSLRA." Order, 11:15-16. The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962. The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the Parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further

explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Order, Rule 23, the PSLRA, and due process. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at \*2–\*3 (S.D. Cal. Feb. 19, 2020); *Rentech,* 2019 WL 5173771, at \*8; *Immune Response*, 497 F. Supp. 2d at 1170 (approving similar notice program).

## VII. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court: finally certify the Settlement Class; find that the notice plan complied with all applicable requirements; and finally approve the Settlement and Plan as fair, reasonable, and adequate.

Dated: August 9, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Daniel Tyre-Karp*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Daniel Tyre-Karp (*pro hac vice*)
Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: dtyrekarp@rosenlegal.com
Email: philkim@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

**GLANCY PRONGAY & MURRAY LLP**
Kara M. Wolke (SBN 241521)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kwolke@glancylaw.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH LR 11-6.2

The undersigned, counsel of record for Lead Plaintiff, certifies that this brief contains 6,988 words, which complies with the word limit of L.R. 11-6.1.

Date: August 9, 2024

/s/Daniel Tyre-Karp

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel Tyre-Karp, hereby declare under penalty of perjury as follows:

I am Counsel at The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071. I am over the age of eighteen.

On August 9, 2024, I electronically filed the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on August 9, 2024

*/s/Daniel Tyre-Karp*